UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  | : |  |
|---|---|---|
| *In re* | : | Chapter 11 |
|  | : |  |
| MOONEY AEROSPACE GROUP, LTD., | : |  |
|  | : |  |
| Debtor. | : | Case Number 04-11733 (MFW) |
|  | : |  |

**Hearing Date:  September 13, 2004 @ 4:00 P.M.**
**Objection Deadline:  September 7, 2004 @ 4:00 P.M.**

## MOTION OF THE ACTING UNITED STATES TRUSTEE
## TO CONVERT CASE TO CASE UNDER CHAPTER 7

In support of her motion to convert the case to a case under chapter 7, Roberta A. DeAngelis,

Acting United States Trustee for Region 3 ("UST"), by and through her counsel, and based upon

information and belief, avers:

### INTRODUCTION

1.      Under 28 U.S.C. § 157(b)(2)(A) and (an) applicable order(s) of the United States

District Court for the District of Delaware, this Court has jurisdiction to hear and determine this

motion.

2.      Under 28 U.S.C. § 586(a)(3)(G), the UST is charged with monitoring the progress

of cases under Bankruptcy Code "and taking such actions as the United States trustee deems

appropriate to prevent undue delay in such progress."

3.      Under 11 U.S.C. § 307, the UST has standing to be heard with regard to this

motion.

1

## GROUNDS FOR RELIEF

4.      Mooney Aerospace Group, Ltd. (the "Debtor") filed the petition which initiated the above-captioned case on June 11, 2004 (the "Petition Date").  Prior to the pre-petition sale of the Debtor's stock in its wholly-owned operating subsidiary, Mooney Airplane Company ("MAC"), the Debtor served as a holding company for that equity interest.  MAC specializes in the production of single engine piston airplanes.

5.      On its petition, the Debtor states that it is "not an operating entity."  The Debtor's schedules indicate that it owns miscellaneous assets having a collective value of approximately $100,000.  $65,000 of that total is apparently an unused retainer being held by Latham & Watkins LLP, the law firm which served as counsel to the Debtor in a sublease dispute discussed below.  The Debtor's schedules list liabilities totaling approximately $46.8 million. Copies of the Debtor's petition, schedules and Statement of Financial Affairs are attached as Exhibit A.

6.      The Debtor is a Delaware corporation that was formed in July, 1996.  Prior to July 23, 2002, the Debtor did business under the name Advanced Aerodynamics & Structures Inc. ("AASI").[1]  AASI changed its name to Mooney Aerospace Group, Ltd. in connection with its acquisition of substantially all of Mooney Aircraft Corporation's assets through the firm's chapter 11 bankruptcy proceeding in the United States Bankruptcy Court for the Western District of Texas (case number 01-53433, assigned to the Honorable Ronald B. King).  The bankruptcy court approved the sale on March 18, 2002, and the sale closed on April 19, 2002.  Copies of the sale

---

[1]

        AASI was incorporated under California law on January 26, 1990.  The California entity merged with the Delaware corporation in July, 1996 as part of a reincorporation effort, with the Delaware corporation retaining the AASI name.

motion and order are attached as Exhibits B and C.

7.    Unfortunately, MAC failed to operate its business profitably, and the Debtor's financial condition suffered.  After reviewing the 2003 financials, the Debtor's auditor, Stonefield Josephson, Inc., opined that there was "substantial doubt as to the Company's ability to continue as a going concern."  Securities and Exchange Commission ("SEC") Form 10-KSB for FY ended 12/31/03 at F-7; attached as Exhibit D.  In support of its conclusion, the auditor cited a cumulative net loss of $140,964,000 as of December 31, 2003 and a working capital deficiency of $17,937,000 as of that same date.

8.    The auditor also pointed to two pieces of significant litigation that the Debtor was engaged in as contributing to its going-concern qualification.[2]  One of those disputes involved a sublease agreement related to certain commercial property located in Long Beach, California.  AP-Long Beach Airport, LLC ("AP-Long Beach") sublet the property to the Debtor for a term of eighteen years beginning in May, 1999 at a monthly rent of $106,167.  AP-Long Beach filed a complaint against the Debtor on grounds that the Debtor violated the sublease agreement.  After the complaint was filed, the Debtor admitted liability to all of AP-Long Beach's claims.  Additionally, the Debtor and AP-Long Beach agreed to enter into binding arbitration with respect to (i) the calculation of damages sought by AP-Long Beach and (ii) whether AP-Long Beach properly mitigated its damages.[3]  On May 28, 2004, the Superior Court of the State of California, Los

---

[2]

    The other piece of litigation cited by the auditor was an employment-related suit filed by two former executives. The Debtor settled that matter in May, 2004 for $200,000 payable over six months from the proceeds of sales of Class A common stock. SEC Form 10-QSB for the 1st quarter of 2004 at 10; copy attached as Exhibit E.

[3]

    Prior to the arbitration award being entered, the Debtor filed reports with the SEC indicating its belief that, based upon the information provided to the arbitrator, "the range of the ultimate resolution of [the AP-Long Beach] matter will be between $9,000,000 and not to exceed the $14,099,000 that is accrued." Ex. D (SEC Form 10-KSB for FY ended 12/31/03) at 10 (bracketed text added).

Angeles County entered judgment against the Debtor.  The judgment affirmed an arbitration award which provided for the payment of $23,901,617.90 plus attorney's fees to AP-Long Beach.  A copy of the SEC Form 8-K report dated May 28, 2004 announcing the AP-Long Beach judgment is attached as Exhibit F.  Additional information regarding the history of the AP-Long Beach litigation is contained in Exhibit D (SEC Form 10-KSB for FY ended 12/31/03) at F-22.

9.    On May 28, 2004 – the same day that the AP-Long Beach judgment was entered – the Debtor and Allen Holding & Finance, Ltd. ("Allen Holding"), a Swiss corporation, entered into a stock purchase agreement ("SPA") for the sale of the Debtor's equity interest in MAC.  Based upon the testimony of J. Nelson Happy (the Debtor's President and a member of the Debtor's board of directors) at the meeting of creditors held pursuant to 11 U.S.C. § 341(a) on July 19, 2004, the UST believes that Allen Holding is an entity owned by one or more of the Debtor's secured debenture holders.  Under the SPA and a separate Assumption Agreement, the Debtor agreed to sell its stock in MAC in exchange for Allen Holding's assumption of the Debtor's and MAC's obligations under alleged secured debentures totaling approximately $21.1 million.  While the Assumption Agreement states that MAC "shall remain jointly and severally liable together with Allen Holding for all of the Obligations," neither the SPA nor the Assumption Agreement release the Debtor from its obligations under the secured debentures.[4]  Additionally, Allen Holding agreed to invest $4 million of new money in MAC in connection with the transaction.  Exhibit F to this motion (SEC Form 8-K report dated 5/28/04) details the transaction.

---

[4]

      Indeed, the amended list of the "top twenty" unsecured creditors filed by the Debtor (Docket Entry # 5) lists 11 secured debenture holders whose obligations were the subject of the Assumption Agreement.

**BASIS FOR RELIEF**

*Lack of Rehabilitative Purpose*

10.     Pursuant to 11 U.S.C. § 1112(b), this Court may, on request of the UST and after notice and a hearing, convert the above-captioned case to a case under chapter 7 of the Bankruptcy Code or may dismiss the above-captioned case, "whichever is in the best interest of creditors and the estate, for cause . . . ."

11.     11 U.S.C. § 1112(b)(1) provides that a "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation" constitutes "cause" sufficient to justify conversion or dismissal.

12.     "Rehabilitation," as the term is used in 11 U.S.C. § 1112(b)(1), means "to put back in good condition; re-establish on a sound, firm basis." 5 COLLIER ON BANKRUPTCY § 1112.03(2) (15th ed. 1980) (quoted in *In re L.S. Good & Co.*, 8 B.R. 315 (Bankr. N.D. W.Va. 1980)).

13.     Here, the Debtor was a holding company prior to the Allen Holding "sale." The Debtor admits that it "is not an operating entity." In addition, the Debtor's schedules and Statement of Financial Affairs indicate that the Debtor has no assets of substantial value.[5]  Given that the Debtor, a holding company, never had a business to rehabilitate, this Court should convert the case to a case under chapter 7. *See In re ABEPP Acquisition Corp.*, 191 B.R. 365, 367 (Bankr. N.D. Ohio 1996) (mere fact that debtors' operations had ceased supports finding of "cause" under 11 U.S.C. § 1112(b)(1), as there is no "reasonable probability" of rehabilitation).

---

[5]
        The UST notes that the Allen Holding sale is <u>not</u> listed in the Debtor's response to item number 10 ("Other transfers") on its Statement of Financial Affairs.

5

*Conflict of Interest*

14.    If the unsecured creditors of this estate have any chance of recovering something on account of their claims, their hopes will likely rest upon a potential preference action or fraudulent conveyance action related to the Allen Holding sale.

15.    The Debtor's "sale" of its most significant asset – its equity interest in MAC – to Allen Holding for (i) no cash and (ii) no release from liability from the debenture obligations is a subject that warrants review by an independent party as a potential preferential transfer or fraudulent conveyance.  Additionally, there may be potential claims that the Debtor's estate has against current or former directors and officers related to the Allen Holding sale.

16.    The present directors and officers of the Debtor, having authorized the subject transaction, are not in a position to independently evaluate potential claims that the Debtor's estate may have related to the Allen Holding sale and, by extension, are not in a position to propose a settlement of such claims to the creditor body.  Accordingly, "cause" exists to convert this case to a case under chapter 7 so that an independent fiduciary may examine the issues related to the Allen Holding sale and, if viable claims exist, vigorously pursue such claims.

17.    Where conflicts of interest prevent insiders of a debtor in possession from carrying out their fiduciary obligation to pursue claims for the benefit of creditors, courts have held that the existence of such conflicts constitute "cause" for the appointment of an independent fiduciary to replace current management under 11 U.S.C. § 1104(a).  *See, e.g., In re PRS Ins. Group, Inc.*, 274 B.R. 381, 387 (Bankr. D. Del. 2001); *In re Cardinal Indus., Inc.*, 109 B.R. 755, 763 (Bankr. S.D. Ohio 1990); *In re Microwave Prods. of America, Inc.*, 102 B.R. 666, 676 (Bankr. W.D. Tenn. 1989). While the instant motion seeks conversion of the above-captioned case to a case under chapter 7, the reasoning supporting the chapter 11 trustee appointments in the aforementioned cases is equally

6

applicable here.  The Debtor's inability to prosecute any claims related to the Allen Holding sale constitutes "cause" for conversion under 11 U.S.C. § 1112(b).  This Court should convert this case to a case under chapter 7 to ensure that estate claims are evaluated and pursued by an independent fiduciary.[6/]

## CONCLUSION/RESERVATION OF RIGHTS

18.     The UST reserves all discovery rights in connection with this motion.

19.     The UST reserves the right to amend and/or supplement this motion.

WHEREFORE the UST requests that this Court issue an order converting this case to a case under chapter 7 of the Bankruptcy Code.

Respectfully submitted,

**ROBERTA A. DeANGELIS**
**ACTING UNITED STATES TRUSTEE**


**BY:** /s/ Joseph J. McMahon, Jr.
            Joseph J. McMahon, Jr., Esquire
            Trial Attorney
            United States Department of Justice
            Office of the United States Trustee
            J. Caleb Boggs Federal Building
            844 King Street, Room 2207, Lockbox 35
            Wilmington, DE  19801
            (302) 573-6491
            (302) 573-6497 (Fax)

Date:  August 11, 2004

---

[6/]

Conversion would have the additional advantage of obviating the need for the estate to bear the cost burden associated with two sets of professionals (those for the Debtor and the Official Committee of Unsecured Creditors), making any liquidation of estate claims which may ensue cost-effective.  *See L.S. Good*, 8 B.R. at 318.