**EXHIBIT B**

FILED
FEB 2 6 2002
U.S. BANKRUPTCY COURT
BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 01-53433-K |
| MOONEY AIRCRAFT CORPORATION, | § | |
| | § | |
| DEBTOR. | § | Chapter 11 |

## DEBTOR'S MOTION FOR APPROVAL OF:
## (i) SALE PROCEDURES AND BIDDING PROTECTIONS IN CONNECTION WITH SALES OF DEBTOR'S ASSETS PURSUANT TO 11 U.S.C. § 363; (ii) THE SALE OF CERTAIN OF DEBTOR'S ASSETS FREE OF LIENS, CLAIMS AND ENCUMBRANCES; (iii) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF CERTAIN OF DEBTOR'S ASSETS; AND (iv) RELATED RELIEF THERETO

TO THE HONORABLE RONALD B. KING, UNITED STATES BANKRUPTCY JUDGE:

MOONEY AIRCRAFT CORPORATION, (the "Debtor"), files this Motion for Approval of (i) Sale Procedures and Bidding Protections in Connection with Sales of Debtor's Assets Pursuant to 11 U.S.C. §363; (ii) the Sale of Certain of Debtor's Assets Free of Liens, Claims and Encumbrances; (iii) Scheduling an Auction and Hearing to Consider the Sale of Certain of Debtor's Assets; and (iv) related relief thereto (the "Motion").

### EXPEDITED NATURE OF MOTION

1.      Debtor files this Motion on an expedited basis. Expedited consideration of this Motion is necessary because of market conditions and Debtor's cash needs. Delays in scheduling an auction and sale of the particular Assets here at issue will not likely result in higher and better offers. Moreover, a delay in the scheduling an auction and sale will be detrimental to Debtor's efforts to reorganize.

253
2/26/02

2.      Debtor requests that the Court schedule an expedited hearing to: (i) establish Sale Procedures to be used for this Sale of Debtor's assets; (ii) set an auction for the assets proposed to be sold; and (iii) set a final hearing to approve the results of the auction and approve a sale of the Assets, free and clear of liens, claims and encumbrances, including the assumption and assignment of certain executory contracts.  Specifically, Debtor requests that the Court approve the proposed Sale Procedures (attached as Exhibit A hereto), approve the bidding protections requested herein, and approve the proposed Auction and Sale Hearing Notice (attached as Exhibit B hereto).

3.      Debtor believes that good cause and sound business reasons exist to sell Debtor's assets outside a plan of reorganization under Section 363(b) of the Bankruptcy Code.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of Debtor's Chapter 11 cases in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

## PROCEDURAL STATUS

5.      On July 27, 2001, (the "Petition Date"), Debtor filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Debtor continues to operate its business and manage its property as Debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

## BACKGROUND

6.      The Debtor is a manufacturer of high performance general aviation aircraft and has produced and shipped over 10,500 aircraft since its inception in 1948.  Beginning in 1953, Mooney has operated at Louis Schreiner Field in Kerrville, Texas, 70 miles northwest of San Antonio, where it produced three industry-leading aircraft prior to shutdown. In 2000, Mooney delivered 100 aircraft resulting in revenue exceeding $40,000,000.00.

7.      With approximately 220 employees pre-petition, Mooney was one of the largest companies in Kerr County. Debtor now employees less than 20 people.

## RELIEF REQUESTED AND BASIS THEREFOR

8.      Debtor request the entry of orders pursuant to Sections 105, 363, 365 and 1146 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2002, 6004 and 6006, that (i) approve Sale Procedures and Bidding Protections (each defined below) which will govern Debtor's sale of assets; (ii) schedule an auction and hearing (the "Sale Hearing") to approve the Debtor's sale of assets and approve the form of notice thereof (the "Auction and Sale Hearing Notice"); (iii) authorize the sale of certain of Debtor's assets (the "Sale") free and clear of liens, claims and encumbrances; (iv) approve the assumption and assignment of certain executory contracts and unexpired leases in connection with the sale of Assets; (v) approve the exemption of the sale of Assets from stamp or similar taxes; and (vi) authorize Debtor to consummate the transactions related to the Sale of Assets.

## PROPOSED SALE OF ASSETS

9.      The assets to be sold to Advanced Aerodynamics & Structures, Inc., a Delaware corporation, or its assignee ("AASI") or to the successful bidder at the Auction,

include substantially all of the tangible and intangible assets of the Debtor (collectively, the "Assets").

10.    To maximize the value to be paid for the Assets, Debtor proposes to sell the Assets though an Auction process described herein.

## DEBTOR'S MARKETING AND SOLICITATION EFFORTS

11.    After the filing of the voluntary petition for relief under Chapter 11, the Debtor began exploring various reorganization options including the sale of the Debtor's assets. Debtor worked with its primary lender and an investment banker to obtain a purchaser of Debtor's assets or a financial partner for a non-liquidating Plan of Reorganization. AASI alone has indicated both the desire and ability to purchase the Assets. AASI has recently acquired the debt and liens previously held by Congress Financial and has recently funded additional amounts to maintain operations pending a sale. Debtor, in its business judgment, has determined that AASI had given Debtor a fair and reasonable offer. A true and correct copy of the Letter Agreement for the purchase of the Assets by AASI dated February 20, 2002 is attached hereto as Exhibit C and incorporated by reference herein.

## THE LETTER AGREEMENT [1]

12.    Debtor proposes to sell the Assets to AASI or to the highest and best bidder (the "Successful Bidder") as determined by Debtor at the Auction, according to the terms of the Letter Agreement. Debtor shall provide a copy of this Motion, including the Letter Agreement to (a) any potential purchasers previously identified by Debtor, or any potential purchaser who requests a copy of same after executing a confidentiality agreement with

---

[1] This Motion only provides a brief summary of the terms of the Letter Agreement attached hereto as Exhibit C. To the extent that there is any discrepancy between the Letter Agreement and this Motion, the Letter Agreement shall prevail in the event of any conflict.

4

respect to any records or facilities of Debtor to be reviewed; (b) the United States Trustee for the Western District of Texas; counsel for the Official Committee of Unsecured Creditors appointed in this case (the "Creditors Committee"); (d) counsel for AASI; and (e) all parties listed on Debtor's Master Service List. The Letter Agreement contemplates further negotiation of a definitive acquisition agreement. Such a definitive acquisition agreement does not exist as of the date of the filing of this Motion. A copy of the acquisition agreement will be served upon the parties requesting same from Debtor's counsel upon the completion of the agreement.

### AASI

13.     Subsequent to the filing of this Chapter 11 case, AASI acquired the note and lien rights of the Debtor's secured lender and is now the Debtor's primary lender.

14.     AASI has agreed to purchase the Assets for: (i) a credit bid of $8,000,000.00[2] (the "Base Sum"), payable at Closing,[3] (ii) cash of $148,000.00 for payment of professional fees through February 1, 2002, payable at closing; (iii) cash in an agreed to amount for payment of professional fees from February 1, 2002, through Closing, payable at Closing; (iv) cash and/or undertakings to cure certain leases with regard to property taxes being assumed and assigned, payable or deliverable at Closing; (v) cash of $15,000.00 to satisfy certain pension and profit sharing expenses under Debtor's Qualified Plan, payable at Closing; (vi) provide, at Closing, adequate assurance for payment of sales and property taxes; (vii) AASI will make a contribution equal to 10% of all allowed unsecured claims up to and not to exceed the sum of $1,000,000.00, payable in 25% cash in escrow and/or a

---

[2] Subject to increase up to approximately $13,700,000.00
[3] All capitalized terms not defined herein shall have the meaning assigned to them in the Letter Agreement.

5

standby letter of credit, and 75% in the common stock of AASI; plus (viii) the issuance of $1,000,000.00 in warrants for the common stock of AASI; plus (ix) retention of certain Chapter 5 claims; plus (x) other consideration as provided by the Letter Agreement ("AASI Offer"). Other terms of the offer may be material and Debtor refers the Court to the terms contained in the Letter Agreement.

15.      The AASI Offer is the only viable offer that has been made to the Debtor. Debtor believes that the AASI Offer is a fair and reasonable price for the Assets. Debtor engaged in substantial marketing efforts and the AASI Offer is the highest and best offer received by Debtor to date. Additionally, since the sale of these Assets is subject to overbids through the Auction, Debtor believes it will receive the highest and best price available for the Assets in the open market. Debtor believes that good cause exists to approve the bidding procedures proposed by Debtor to be used in the Auction.

## THE SALE PROCEDURES AND BID PROTECTIONS

16.      Debtor will permit any qualified prospective purchaser to perform reasonable (but brief) due diligence with respect to the Assets and will assist them with such efforts, including the opportunity to meet with management and access to a data room.[4] This process will culminate in an Auction prior to the final hearing to approve the sale of Assets (the "Sale Hearing") at which time the sale of Assets to the Successful Bidder will be approved. The Auction will be conducted pursuant to the terms of the Sale Procedures attached as Exhibit A hereto. Debtor believes that the proposed Sale Procedures will

---

[4]  First Equity, the investment banker retained by Congress Financial, extensively marketed Debtor, with AASI being by far the best proposal. Delay in permitting extensive due diligence at this late date would be detrimental to the Debtor.

enable Debtor to obtain the highest and best offers for the Assets and will maximize the value to Debtor's estate.

17.      The Sale Procedures requested to be approved in this Motion will govern the sale of Assets to AASI contemplated herein.  Pursuant to the proposed Sale Procedures and Bidding Protections, AASI's Offer, represented by the Letter Agreement, constitutes the opening offer at the Auction for the Assets (the "Initial Bid").

18.      The Sale Procedures, attached as Exhibit A to this Motion, asks the Court to:

(A)      approve certain bidding protections set forth in the Sale Procedures, including (i) a break up fee to AASI in the amount of $200,000.00, and (ii) a topping fee to Debtor of the amount of $100,000.00; plus all sums advanced by AASI pursuant to the budget approved by the Court on February 11, 2002 or due by AASI pursuant to Consulting Agreement approved by the Court on February 6, 2002.

(B)      approve the Sale Procedures to be employed in connection with the sales of Debtor's assets as contemplated herein, including establishing an auction date, related deadlines and the terms and conditions for the submission of competing offers for the Debtor's assets;

(C)      approve the proposed notice of the Sale Procedures, auction date and the final hearing on any motions to sell Debtor's assets; and

(D)      schedule the auction to be held at Courtroom No. 3, Old Post Office and Courthouse, 615 E. Houston, Fifth Floor, San Antonio, Texas 78205, and a hearing to approve a sale of Debtor's assets under an asset purchase agreement.

7

19.     Debtor hereby requests that the Court approve certain bidding protections to AASI for the Sale that are customary in similar circumstances (the "Bidding Protections"), including: (a) a break up fee payable to AASI in the amount of $200,000.00 (the "Break-up Fee"); (b) a topping fee payable to Debtor in the amount of $100,000.00; plus all sums advanced by AASI pursuant to the Budget approved by the Court on February 11, 2002 or due to AASI pursuant to the Consulting Agreement approved by the Court on February 6, 2002 (the "Topping Fee"); and an initial overbid calculated as follows: for purposes of determining whether a higher, but not necessarily better, bid has been proffered, any bid received by Debtor at or prior to the Auction, must exceed the Base Sum (the amount of which is quantified by Debtor in good faith and announced prior to the Auction) by no less than the sum of an additional $250,000.00 plus an increase in the distribution payable to unsecured creditors by 2.5% (the "Initial Overbid").    Bidding increments after the Initial Overbid shall be made in minimum increments of $100,000.00, as determined by Debtor in its reasonable business judgment. Other bidders shall be required to pay cash equal to the common stock and warrants to be provided by AASI and will also be required to place a good faith deposit of $1,000,000.00. A competing bid must generally track the Letter Agreement.

Debtor believes that selling Debtor's assets in accordance with these Sale Procedures will enable Debtor to review, analyze and compare all bids received in a uniform fashion to determine which bid(s) is(are), in the best interests of the Debtor, its estate and its creditors. Therefore, Debtor respectfully requests that this Court approve the Sale procedures.

8

## JUSTIFICATION FOR SALE PROCEDURES AND BIDDING PROTECTIONS

20.    The Sale Procedures and Bidding Protections requested herein should be approved because they (i) are the product of Debtor's sound business judgment; (ii) are in the best interest of Debtor's estates and all other interested parties; (iii) will enhance the bidding process; (iv) will maximize the value of the Assets; and (v) they are fair and reasonable under the circumstances.

21.    The Bidding Protections are mechanisms employed by corporations to encourage potential buyers to make bids to purchase the corporation or the corporation's assets.    The protections corporations typically offer include a combination of various incentives such as break up fees, overbid protections and expense reimbursements. *In re Integrated Resources, Inc.,* 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd,* 147 B.R. 650 (S.D.N.Y. 1992), *appeal dismissed,* 3 F.3d 49 (2d Cir. 1993).

22.    Outside of the bankruptcy context, target corporations often employ bid protections to attract bidders. *See In re Integrated Resources, Inc.*, 135 B.R. at 750; *In re Hupp Indus., Inc.,* 140 B.R. 191, 195 (Bankr. N.D. Ohio 1992).    Similarly, numerous bankruptcy courts have approved motions by Debtor requesting bid protections. *E.g., In re Integrated Resources, Inc.*, 135 B.R. at 751(citing several instances of bankruptcy court approval of bid protections). A selling corporation's rationale for granting bid protections is to encourage an initial bid, often referred to as a "stalking horse" offer. *In re APP Plus, Inc.,* 223 B.R. at 874.    Upon receipt of the initial offer, the debtor can demonstrate the attractiveness of the assets and induce higher offers. *In re Integrated Resources, Inc.*, 135 B. R. at 750. At the same time, the initial offeror wants protection that another entity will not rely on the offeror's costly due diligence and submit a  higher bid. *Id.* For these

reasons, courts permit bid protections "provided the protections create an incentive for increased bidding in sales from bankruptcy assets." *Wintz v. American Freightways, Inc.,* (In *re Wintz Cos.),* 230 B.R. 840, 846 (B.A.P. 8th Cir.1999).

23.  Courts have noted that bid protections, including break up fees, may be necessary to encourage a "stalking horse" bidder to offer an initial bid. *See In re Integrated Resources,* 147 B.R. 650, 660 (S.D.N.Y. 1992).

24.  Courts have employed various tests to determine whether the protections proffered by Debtor should be granted.

## THE PROPOSED BIDDING PROCEDURES AND BIDDING PROTECTIONS SHOULD BE APPROVED UNDER THE BUSINESS JUDGMENT RULE

25.  Because the proposed Sale Procedures and Bidding Protections are a sound business decision, made in good faith and with full information, this Court should approve the Sale Procedures and Bidding Protections pursuant to the "business judgment rule."

26.  The Bankruptcy Court of the Southern District of New York has held that the "business judgment of the Debtor is the standard applied under the law in this district." *In re Integrated Resources, Inc.,* 135 B.R. at 753; *see also In re 995 Fifth Ave. Assoc., L.P.,* 96 B.R. 24, 28 (Bankr. S.D. N.Y. 1989). The court then applied the business judgment rule under New York law: whether the debtor's actions were "taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *Auerhach v. Bennett,* 393 N.E.2d 994, 1000 (N.Y. 1979).

27.  Applying the *Integrated Resources* test to the Bidding Protections proposed by Debtor, the Court should grant the Motion. Under the business judgment rule, the Sale Procedures and Bidding Protections are a sound business decision, made in good faith and with full information. *Pace v. Jordan, 999* S.W.2d 615, 623-24 (Tex. App.—Houston

[1st Dist.] 1999, *pet. denied*)(applying the business judgment rule under Texas law).  The Sale Procedures and Bidding Protections are not tainted by self-dealing or manipulation because they were negotiated at arms-length between the Debtor and AASI, two unrelated entities.  Debtor believes that the Sale Procedures and Bidding Protections are in Debtor's best interest.

28.     The Sale Procedures and Bidding Protections also encourage, rather than hinder, bidding because they will compensate AASI for the time and effort it is undertaking by making its offer.  More importantly, they promote more competitive bidding.  AASI has not only conducted extensive factual research as to the value of the Assets, but it has also created the floor for any future bids for these Assets.  Debtor will be able to conduct further negotiations regarding AASI's Offer and use AASI's Offer to attract other potential buyers.  Any other potential buyer is also likely to demand similar Bidding Protections before *making a final purchase offer.  Therefore, the Sale Procedures and Bidding Protections are* a necessary element of Debtor's plan to sell the Assets.

29.     Debtor seeks the approval of the Break-Up Fee, Topping Fee and Initial Overbid.  The fees and overbid increments are clearly reasonable in relation to the Base Sum offered by AASI.  *See In re America West Airlines, Inc.,* 166 B.R. 908, 913-14 (Bankr. D. Ariz. 1994)(approving reimbursement of expenses up to $3 million); *In re Wintz Cos.,* 230 B.R. 840 (approving bid protections granting potential purchasers the right to match the amount of competing bids).

## THE PROPOSED BIDDING PROCEDURES AND BIDDING PROTECTIONS
## SHOULD BE APPROVED UNDER THE BEST-INTEREST TEST

30.     The Sale Procedures and Bidding Protections are in the best interest of Debtor's Estate.    Several courts have concluded that bidding procedures should be approved when the proposed transaction (i) is in the best interest of Debtor's estates, creditors, equity holders, and other parties involved, or (ii) maximizes revenues for the estate.    *In re Tiara Motorcoach Corp.,* 212 B.R. 133, 137 (Bankr. N.D. III. 1997); *In re S.N.A. Nut Co.,* 186 B.R. 98, 104 (Bankr. N.D. III. 1995), *In re America West Airlines, Inc.,* *166* B.R. at 912.[5]

31.     The proposed Sale Procedures and Bidding Protections should be approved under the best-interest test.    As discussed above, the Sale Procedures and Bidding Protections will encourage bidding by convincing AASI to pursue further its interest in the Assets and demonstrating the attractiveness of the Assets to other potential purchasers. Obviously, the receipt of higher bids will benefit not only Debtor, but their creditors as well. Even if no further Qualified Bids are obtained, all parties involved will retain the benefits inherent in the AASI Offer.    Finally, any serious bidder will likely require similar Bidding Protections before making a binding offer, and AASI has expressed its intent to abandon the purchase of the Assets if it does not receive the Bidding Protections.    For these reasons, the Bidding Protections will serve the interests of all parties and maximize revenues for the estate.

---

[5]The Court in In *re APP Plus, Inc., 223* B.R. 870 (Bankr. E.D.N.Y. 1998) created a test that combines the In *re Integrated Resources, Inc.* application of the business judgment rule with the best interest of the parties test applied by other courts. *In re App Plus, Inc., 223* at 875.

## THE PROPOSED BIDDING PROCEDURES SHOULD BE APPROVED
## UNDER THE SEVEN-FACTOR IN RE HUPP INDUSTRIES, INC. ANALYSIS

32.    Under the balancing test utilized in *In re Hupp Industries, Inc., 140* B.R. 191

(Bankr. N. D. Ohio 1992), this Court should approve the Bidding Protections.  In *In re Hupp*

*Industries, Inc.,* the Ohio Bankruptcy Court used the following seven factors to "carefully

scrutinize" proposed bidding protections:

(1)    Whether the fee requested correlates with a maximization of value to the

debtor's estate;

(2)    Whether the underlying negotiated agreement is an arms-length transaction

between the debtor's estate and the negotiating acquirer;

(3)    Whether the principal secured creditors and the official creditors' committee

are supportive of the concession;

(4)    Whether the subject break-up fee constitutes a fair and reasonable

percentage of the proposed purchase price;

(5)    Whether the dollar amount of the break-up fee is so substantial that it

provides a "chilling effect" on other potential bidders;

(6)    The existence of available safeguards beneficial to the debtor's estate; and

(7)    Whether there exists a substantial adverse impact upon unsecured creditors,

where such creditors are in opposition to the break-up fee.

*Id.* at 194.

33.    Under this seven-factor analysis, this Court should approve the Sale

Procedures and Bidding Protections.  As discussed above, the Sale Procedures and

Bidding Protections maximize value to the estates and were the result of an arms-length

transaction between Debtor and AASI.  Since Debtor will continue to pursue and potentially receive offers from other potential acquirers, there are safeguards beneficial to Debtor's estate.

34.    Regardless of which test this Court applies, the Sale Procedures and Bidding Protections are in the best interests of Debtor and its estate.  The Sale Procedures and Bidding Protections are the product of Debtor's sound business judgment and will benefit all parties involved.  More importantly, granting Sale Procedures and Bidding Protections will enhance the bidding process by allowing Debtor to use AASI's Offer to demonstrate the attractiveness of the Assets to other potential bidders.  If AASI's offer turns out to be the most attractive alternative, and Debtor consummate the sale to AASI, Debtor will avoid payment of the Break-up Fee and/or Topping Fee to AASI.    In any event, the Sale Procedures and Bidding Protections will maximize the value of Debtor's estate which will, in turn, benefit both Debtor and its creditors.

## NOTICE OF THE AUCTION AND THE SALE HEARING

35.    Under Federal Rule of Bankruptcy Procedure 2002(a) and (c), Debtor is required to notify all creditors of any proposed sale of Assets, including disclosing the time and place of the Auction, the terms and conditions of any sale of assets and the deadline for filing any objections thereto. The proposed Auction and Sale Hearing Notice (substantially in the form of Exhibit B hereto) includes this type of information, and also includes information on the Sale Procedures and Bid Procedures.  Debtor requests that the Court approve the form and content of the Auction and Sale Hearing Notice.

36.    Debtor proposes to serve the Auction and Sale Hearing Notice within two (2) business days of the entry of the Sale Procedures Order by first-class U.S. mail, postage

14

prepaid to (a) all potential purchasers identified by Debtor; (b) the United States Trustee for the Western District of Texas; (c) counsel to the Committee; (d) counsel to AASI, and (e) all parties on Debtor's Master Service List.

37.    Debtor submits that the Auction and Sale Hearing Notice and this Motion to be served by the methods of service set forth herein constitute good and adequate notice of the sale of Assets and the proceedings related thereto.  Debtor therefore request this Court approve the notice procedures set forth herein.

WHEREFORE, PREMISES CONSIDERED, Debtor respectfully requests the entry of an order (i) granting this Motion and approving the Sale of certain of Debtor's assets; (ii) approving the proposed Sale Procedures, Bidding Protections, and the Auction and Sale Hearing Notice; (iii) granting the specific relief outlined in the proposed order submitted herewith; and (iv) granting Debtor such other and further relief to which it is entitled, either at law or in equity.

Dated: February  26 , 2002, San Antonio, Texas.

Respectfully Submitted,

LANGLEY & BANACK, INCORPORATED
745 E. Mulberry, Suite 900 - Trinity Plaza II
San Antonio, Texas 78212
(210) 735-6889 Telecopier
(210) 736-6600 Telephone

David S. Gragg
State Bar No. 08253300
Steven R. Brook
State Bar No. 03042300
M. Scott Zimmerer
State Bar No. 24003233

*Attorneys for Debtors In Possession*

15

## CERTIFICATE OF SERVICE

I hereby certify that, pursuant to Bankruptcy Local Rule 9013 and the Order Limiting Notice to Debtor's Master Service List, a true and correct copy of the foregoing Expedited Motion for Approval of (i) Sale Procedures and Bidding Protections in Connection with Sales of Debtor's Assets Pursuant to 11 U.S.C. § 363; (ii) the Sale of Certain of Debtor's Assets Free of Liens, Claims and Encumbrances; (iii) Scheduling an Auction and Hearing to Consider the Sale of Certain of Debtor's Assets; and (iv) related relief thereto was served by United States first-class mail, postage prepaid to all parties entitled to notice, including the parties listed on the Master Service List attached to the original Motion filed with the clerk of this Court on the _26th_ day of February, 2002.

David S. Gragg

F:\CATHI\DOCS\Mooney 5615-001\SALE\Motion to Sale & Auction.2-20-02.Final 2a.wpd

16

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

IN RE:                                   §
                                         §    CASE NO. 01-53433-K
MOONEY AIRCRAFT CORPORATION,             §
                                         §
        DEBTOR                           §    Chapter 11

## LIMITED SERVICE LIST

**Debtor**
Mooney Aircraft Corporation
Louis Schreiner Field
Kerrville, TX 78028

**Debtor's Attorney**
David S. Gragg
Steven R. Brook
Langley & Banack, Inc.
745 E. Mulberry, Ste. 900
San Antonio, TX 78212

**Responsible Person for Debtor**
Greg Murray
Mooney Aircraft Corporation
Louis Schreiner Field
Kerrville, Texas 78028

**U.S. Trustee**
Pat Barsalou
Office of the U.S. Trustee
615 E. Houston, Rm. 533
P.O. Box 1539
San Antonio TX 78295-1539

## Secured Creditors

Eric Terry for AASI
Haynes & Boone, LLP
112 East Pecan St., Suite 1600
San Antonio, TX 78205-1540

Advanced Aerodynamics &
Structures Inc. (AASI)
Roy Norris/Nelson Happy
3205 Lakewood Blvd.
Long Beach Airport, CA 90808

Chrysler Financial
P.O. Box 530054
Atlanta, GA 30353-0054

Stephen G. Wilcox for
Chrysler Financial
Law Snakard & Gambill PC
810 Cherry St. Suite 3300
Fort Worth, TX 76102

Textron Financial
Mr. Dave Hahn
9001 Airport Freeway, Suite 800
Fort Worth, TX 76180-7773

Ray Urbanick for
Textron Financial
Munsch Hardt Kopf & Harr, PC
4000 Fountain Place
1445 Ross Avenue
Dallas, TX 75202-3790

## Committee of Unsecured Creditors

Aerospace Systems &
Technology, Inc.
Attn:   Kevin Hawley
3213 Arnold Avenue
Salina, KS 67401

ASI-AERO Services, Inc.
Attn:   Tim Ashenfelter
14801 Pioneer Trail
Eden Prairie, MN 55347

BF Goodrich Avionics
Attn:   Carmen Runyan
5353 52nd Street SE
Grand Rapids, MI 49512

Henry Weber Aircraft
Attn:  Steven C. Gerz
500-B Airport Road
Lititz, PA 17543

Rocky Mountain Mooney
Attn:  Mac McDowell
515 Lakeside Place
Windsor, CO 80550

Trajen, Inc.d/b/a Flight Support
Attn: John Clanton
3131 Briarcrest Drive, Suite 100
Bryan, TX 77802

Transtar Metals
Attn:    Ted Alpert
15060 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403

Teledyne Continental Motors
Attn: Michael E. Irby
P.O. Box 90
Mobile, AL 36601

Leperque de Neuflize & Co.
Attn: James Griffin
1675 Broadway 16th Floor
New York, NY 10019

Jason R. Adams, Attorney
for Lepercq de Neuflize & Co.
Torys LLP
237 Park Avenue
New York, NY   10017-3142

### Attorney for Creditor's Committee

James H. Fierberg
Paul Steven Singerman
Berger Singerman
200 S. Biscayne Blvd. Ste. 1000
Miama, Florida 33131

### Top Twenty Creditors of Mooney Aircraft Corporation

ASI-AERO Services
Attn:    Tim Ashenfelter
14801 Pioneer Trail
Eden Prairie, MN 55347

Aerospace Systems and
Technology
Attn:    Kevin Hawley
3213 Arnold Avenue
Salina, KS 67401

American Express
Attn:    Susan Woods
P.O. Box 630001
Dallas, TX 75363-0001

BF Goodrich Avionics
Attn:    Carmen Runyan
P.O. Box 71970
Chicago, IL 60694-1970

Caprock Health Plans, Inc.
Attn:    Russell Bland
P.O. Box 54133
Lubbock, TX 79453-4133

Contour Composites
Attn:    Eric Jergensen
1955 South 1800 West
Woods Cross, UT 84087

Ernst & Young
Attn:    A.P. Jennings
1900 Frost Bank Tower
San Antonio, TX 78205

Garmin International
Attn:    Linda Bryan
P.O. Box 503664
St. Louis, MO 63150-3664

Henry Weber Aircraft
Attn:    Steve Gerz
500-B Airport Road
Lititz, PA 17543

Leperque, De Neuflize &
Company
Attn:    Jim Griffin
1675 Broadway
New York, NY 10019-5820

McCauley Accessory Division
Attn:    Tim Karns
3535 McCauley Drive
Vandalia, OH 45377

Mooney Holding Company
Attn:    Jim Griffin
c/o 1675 Broadway
New York, NY 10019-5820

Moritz Corporation
Attn:   Karen Perjon
608 Elephant Road
Perkasie, PA 18944

N2 Consulting, LLC
Attn:   Todd Yoder
16633 Dallas Parkway, #600
Addison, TX 75001

Rocky Mountain Mooney
Attn:   Mac McDowell
515 Lakeside Place
Windsor, CO 80550

TXU Lone Star Gas
Attn:   Ken Rhodes
P.O. Box 910255
Dallas, TX 75391-0255

Teledyne Continental
Attn:   Joanne Fornander
P.O. Box 360-576M
Philadelphia, PA 15251

Trajen Flight Support
Attn:   John Clanton
3131 Briarcrest Drive, Suite 100
Bryan, TX 77802

Transtar Metals
Attn:   Ted Alpert
15060 Ventura Blvd., Suite 400
Sherman Oaks, CA 91403

Willis Corroon
Attn:   Phil Elson
P.O. Box 9335 GPO
New York, NY 10087-9335

## Others - Parties Requesting Notice

Paul S. & Layte Dopp
10220 S.W. 135th Street
Miami, FL 33176

Texas Comptroller of Pubicl
Accts.
P.O. Box 13528  Capital Station
Austin, TX 78711-3528

Internal Revenue Service
Special Proc Branch
STOP 5022 AUS
300 E. Austin, TX 78701

Securities & Exchange Comm
Bankruptcy Section
500 W. Madison #1400
Chicago, IL 601-2511

Flight Safety International
Amparo Calatayud
9027 Airport Blvd.
San Antonio, TX 78216

FAA Aircraft Registry
Attn: Central Records
Oklahoma City, OK 73125

International Avionics
Charles
3782 Realty Road
Addison, TX 75001

XOR Fireant Technology
C.B. Rowan
P.O. Box 1470
Tulsa, OK 74182-1470

Groupe MSC SA
Michael Seydoux
19 Rue de al Tremoille
75008 Paris,
FRANCE

Euralair, S.A.
Alexandre Couvelaire
44 Rue Boileau
7501 Paris
FRANCE

Steve Weakley, Esq.,
Duncan, Weakley & Bressler,
Inc.
603 Navarro Blvd., Suite 1000
San Antonio, Texas 78205

Kirk Swinney, Esq.
McCreary, Veselka, Bragg &
Allen
P.O. Box 26990
Austin, Texas 78755

Zack A. Clement
Fulbright & Jaworski, LLP
1301 McKinney, Suite 5100
Houston, Texas 77010

Robert J. Berens, Esq.
Mann, Berens & Wisner, LLP
2929 North Central Ave., #1600
Phoenix, Arizona 85012-2760

David R. Mayo, Esq.
Benesch Friedlander Coplan
etal
2300 BP Tower, 200 Public Sq.
Cleveland, Ohio 44114

Raymond Urbanik, Esq.
Munsch Hardt Kopf & Harr,
P.C.
4000 Fountain Place
1445 Ross Ave.
Dallas, Texas 75202-3790

Mooney Aircraft Payroll
Attn: Hank Engel, Human Res.
Louis Schreiner Field
Kerrville, Texas 78028

Jack M. Partain, Jr.
Fulbright & Jaworski, LLP
300 Convent Street, Suite 2200
San Antonio, Texas 78205

Stephanie Deviney
Brown & Connery, LLP
360 Haddon Avenue
P.O. Box 539
Westmont, NJ 08108

John Mark Stern, Esq.
Office of the Texas Atty
General
Bank & Collection Division
P.O. Box 12548
Austin, TX 78711-2548

Bankruptcy Administration
IOS Capital, Inc.
1738 Bass Road,
P.O. Box 13708
Macon, Georgia 31208-3708

Stephen G. Wilcox
Law Snakard & Gambill PC
801 Cherry Street, Suite 3300
Fort Worth, TX 76102

Kerr County Tax Assessor/Coll.
700 Main St., #124
Kerrville, TX 78028

Kerrville ISD
329 Earl Garrett St.
Kerrville, TX 78028

Kerrville ISD
c/o Tax Assessor/Collector
832 Main - Suite 101
Kerrville, TX 78028

Jeffrey D. Saferstein, Esq.
1285 Avenue of the Americas
New York, NY 10019-6064

Charles W. King, Esq.
327 Earl Garrett Street
Suite 104
Kerrville, TX  78902

Diane Ringler
200 W. Carpenter Frwy
Irving, TX 75039

Kevin B. Laughlin, City Atty.
City of Kerrville, Texas
800 Junction Highway
Kerrville, TX 78028

Kent C. Krause
Speiser Krause
900 Jackson St. Suite 750
Dallas, TX 75202

Larry W. Wise for
Amada America, Inc.
Hargadon & Wise P.C.
400 West 15th, Suite 710
Austin, TX 78701

Louis J. Khoury, P.C. for
Michael Bey and Estate of
Reiner Bey
1801 Century Park E., #2400
Los Angeles, CA 90067

James A. Hoffman and
Robert J. Rosenbach for Kerr
Economic Develop. Foundation
Clemens & Spencer
112 E. Pecan St., Suite 1500
San Antonio, TX 78205

Deborah D. Williamson for
ASI-Aero Services, Inc.
Cox & Smith, Inc.
112 E. Pecan, Suite 1800
San Antonio, TX 78205

Carol Jendrzey
for Galvin Flying Service,
Ken Owens and Ken-Tech, Inc.
Cox & Smith
112 E. Pecan, Suite 1800
San Antonio, TX 78205

Eric Terry
Haynes & Boone, LLP
112 East Pecan St., Suite 1600
San Antonio, TX 78205-1540

Charles A. Heaton
Industrial Capital Partners LLC
985 Glenarbor Circle, First Floor
Longmont, CO 80501

Mark A. Castillo for
Teledyne Technologies
Baker Botts LLP
2001 Ross Avenue
Dallas, TX 75201-2980

Joel H. Klein for
Trimble Navigation
6800 Park Ten Blvd. Ste 264-So.
San Antonio, TX 78213-4204

Mike McConnell
Winstead Sechrest & Minick, PC
777 Main St., Suite 1100
Fort Worth, TX 76102

John W. Myers for Douglas Small
Boult Cummings Conners & Berry
414 Union St., #1600
P.O. Box 198062
Nashville, TN 37219

Patrick H. Autry
Matthews & Branscomb PC
112 E. Pecan St. Suite 1100
San Antonio, TX 78205

Henry David Babenco
403 Mountain View Ave.
Bluefield West VA 24701

Wendel H. Livingston
Becket & Lee LLP for
American Express Tavel Svcs
P.O. Box 3001 Dept. AC
Malvern, PA 19355-0701

South Texas Cardiovascular
Consultants
Attention:  Melinda Perez
4330 Medical Drive, Suite 110
San Antonio, Texas   782229

# EXHIBIT A

### SALE PROCEDURES

## SALES PROCEDURES

The following procedures (the "Sales Procedures") shall govern the sale of certain assets (the "Assets") of Debtor including the sale of substantially all the assets of the Debtor in a single sale to a single purchaser (the "Sale"). These Sale Procedures have been approved and authorized by an order of the Honorable Ronald B. King, United States Bankruptcy Judge, dated March __, 2002 (the "Sale Procedures Order") in the Chapter 11 case of Debtor, which case was commenced on July 27, 2001 (the "Petition Date").

A.    Initial Qualified Bidder

Debtor has received and accepted a bid from Advanced Aerodynamics & Structures, Inc., which the Debtor, in its reasonable business judgment, has determined to be the highest and best bid received to date for the purchase of the Assets. Advanced Aerodynamics & Structures, Inc. shall be referred to herein as the "Initial Qualified Bidder" and its bid shall be referred to as the "Initial Bid". The Debtor shall enter into a definitive asset purchase agreement with the Initial Qualified Bidder (the "Initial Asset Purchase Agreement").

In return for the Initial Qualified Bidder entering into the Initial Asset Purchase Agreement, the Initial Qualified Bidder shall receive, upon execution of that agreement with Debtor, certain bidding protections that are customary in similar circumstances (the "Bidding Protection"), including a break-up fee in the amount of $200,000.00 ("Breakup Fee"). The Initial Qualified Bidder must be in material compliance with the Initial Asset Purchase Agreement as a condition to receiving these protections.

B.    Assets to be Sold

Debtor shall consider bids for the Assets in a single sale to a single bidder. The Assets shall be sold free and clear of all liens, claims and encumbrances. The Assets to

-1-

be auctioned in the Sale pursuant to these Sales Procedures shall include substantially all tangible and intangible property comprising the business of Mooney Aircraft those described in an Initial Asset Purchase Agreement entered into with the Initial Qualified Bidder.

      C.    <u>Mailing the Auction and Hearing Notices</u>

Within two (2) days of the date of the Order approving these Sales Procedures, the Debtor shall cause the Auction and Sale Hearing Notice and the Letter Agreement to be sent by first class mail, postage prepaid, to (a) all potential purchasers previously identified by Debtor; (b) the United States Trustee for the Western District of Texas, (c) Langley & Banack, Incorporated; (d) counsel to the Committee; (e) counsel to Initial Qualified Bidder; (f) all parties on Debtor's Master Service List; and (h) the parties to Debtor's executory contracts and unexpired leases that may be subject to assumption and assignment or rejection. Further, within two (2) days of the completion of the Initial Asset Purchase Agreement, the Debtor shall also cause the Initial Asset Purchase Agreement to be sent by first class mail, postage prepaid to the persons requesting same from Debtor's counsel.

Any other party in interest that wishes to receive a copy of the relevant Initial Asset Purchase Agreement shall make such request in writing to Langley & Banack, Incorporated, 745 E. Mulberry, Suite 900, San Antonio, Texas 78212, Attn: David S. Gragg; Telephone (210) 736-6600, Telecopy: (210) 735-6889.

      D.    <u>Qualified Bids and Qualified Bidders</u>

All offers to purchase all or some of the Assets (a "Bid(s)") must be in writing, conform to the terms and conditions described in these Sale Procedures and be binding on each entity or partner participating in the Bid (the "Bidders"). Bids must be sent to the Debtor c/o Greg Murray, Responsible Person, Mooney Aircraft Corporation, Louis

Schreiner Field, Kerrville, Texas 78028, with a copy to Debtor's bankruptcy counsel, David S. Gragg, Langley & Banack, Incorporated, 745 E. Mulberry, Suite 900, San Antonio, Texas 78212, with copies to the counsel for the Committee, Mr. James Fierberg, Berger Singerman, 200 South Biscayne Blvd., Suite 1000, Miami, FL 33121, such that the bid is actually received by these parties by no later than March _____, 2002 at 10:00 o'clock a.m. Central Standard Time (the "Bid Date")

All Bids must be submitted with copies of the Initial Asset Purchase Agreement, if available, or if not available, the Initial Qualified Bidder's Letter Agreement, black-lined to show any changes requested by the Bidder (a "Modified Asset Purchase Agreement"). Each Bidder must sign its proposed Modified Asset Purchase Agreement, committing to perform under it, subject to Court approval and the conditions contained in it. Such signature and commitment shall have been approved by the Board of Directors, Board of Managers or other person or entity having authority of the Bidder. The Modified Asset Purchase Agreement (including any exhibits thereto submitted by each Bidder) shall contain all of the terms and conditions of the proposed purchase, including all of the representations and warranties to be made by Debtor and required of the Bidder. Each Bid must fully disclose the identity of each entity that will be acquiring a portion of the Assets under such Bid.

All Bids must be accompanied by $1 million, which is a deposit in an amount equal to approximately 10% of the cash value of the Initial Bid (the "Deposit"). The Deposit shall be payable to Mooney Aircraft Corporation and be paid by (i) wire transfer, or (ii) certified or cashier's check. The Deposit shall be returned to any Bidder whose Bid is not accepted within two (2) business days of the Closing of the Successful Bid (defined below). In the

-3-

event that a Bidder fails to consummate a sale due to its breach of its Modified Asset Purchase Agreement, Debtor shall retain the Deposit as liquidated damages.

If closing a Bid is conditioned on the assumption and assignment of any executory contracts or unexpired leases, the Bid must include sufficient information to permit the Court, Debtor, and the applicable lessors and contracting parties to determine the proposed assignee's ability to comply with Section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such assignee's ability to perform in the future (the "Adequate Assurance Package"). The bidder must also provide the Adequate Assurance Package directly to any party to such contracts or leases so that it is actually received by such party on or before the date the Bid is due.

Bidders must complete all required due diligence prior to the submission of their Bid. Each Bidder will be provided with access to a data room for the purposes of conducting the necessary (but limited) due diligence to formulate an informed Bid through the Bid Date. Access to certain confidential information of Debtor will remain available to bidders through the Bid Date. Bidders shall have access to such information only upon execution of a confidentiality agreement in a form satisfactory to Debtor.

Bidders making a Bid meeting all the criteria set forth in this Section D are Qualified Bidders and such Bids are Qualified Bids. Only Qualified Bidders may bid at the Auction and only Qualified Bids may be made at the Auction.

     E.     The Auction and Selection of the Successful Bid or Bids

The Auction will be conducted at Courtroom No. 3, Old Post Office and Courthouse, 615 E. Houston, Fifth Floor, San Antonio, Texas 78205, or at another location as may be timely disclosed by Debtor to Qualified Bidders. The Auction pursuant to these Sales Procedures shall be held at ___:___ o'clock ___ . m., on March _____, 2002 (the

"Auction Date"). All bidders shall appear in person at the Auction, or through a duly authorized representative. If multiple Bids satisfying all Auction requirements are received, each party shall have the right to continue to improve its bid at the Auction.

In determining the value to Debtor of any Bid, Debtor may take into account terms and factors such as: (i) whether the Bid is for cash or other consideration, (ii) whether the Bid contains terms different from the terms proposed in the Initial Asset Purchase Agreement, (iii) whether the Bid will require Debtor to pay any fees to the Bidder or any other person, (iv) whether the Bidder appears able and likely to close, and (v) such other factors as may be identified as material by Debtor. For purposes of determining whether a higher, but not necessarily better, Bid has been proffered, any Bid received by Debtor at or prior to the Auction, must exceed the Base Sum in the Initial Asset Purchase Agreement (the amount of which is quantified by Debtor in good faith and announced prior to the Auction) by no less than the sum of an additional $250,000.00 (the "Initial Overbid") plus increase the distribution payable to the unsecured creditors by 2.5%. Bidding increments after the Initial Overbid shall be made in minimum increments of $100,000.00.

At the conclusion of the Auction, and subject to Court approval following the Auction, the successful Bid shall be selected by Debtor from the Bids (the "Successful Bid"), provided, however, that Debtor shall have the right to reject any and all Bids at their discretion in the exercise of their business judgment. Specifically, Debtor may, among other things, reject all Bids, if in Debtor's reasonable business judgment no Bid is for a fair and adequate price.

The Court may hear any objections to the selection of the Successful Bid and any other objections to the proposed sale of the Assets free and clear of liens under Section 363(f) of the Bankruptcy Code and consider whether to enter the Sale Order containing

terms acceptable to the Winning Bidder. If the Court enters the Sale Order approving the Successful Bid, Debtor shall complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids were made, if that has not occurred before, and Debtor's officer and directors shall use good faith and best efforts to take all reasonable steps to close the transaction with the successful bidder ("Successful Bidder"). All offers submitted by Qualified Bidders shall be irrevocable until the closing of a purchase of all of the Assets.

F.    Reservation of Rights, Deadline Extensions

Debtor reserves the right to (i) amend and/or impose additional terms and conditions at or prior to the Auction, (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction at the Auction and/or the Sale Hearing in open court without further notice, (iii) withdraw from sale any Assets at any time prior to or during the Auction and to make subsequent attempts to market the same, and (iv) to reject all Bids, if in Debtor's reasonable judgment no Bid is found to be for a fair and adequate price.

G.    Hearing to Approve Sale to Successful Bidder

The Sale Hearing Date shall be March _____, 2002, at ___:___ o'clock ___.m. or as soon thereafter as counsel may be heard.

# Exhibit B

**Auction and Sale Hearing Notice**

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

In re:                                    §
                                          §
MOONEY AIRCRAFT CORPORATION,              §    Case No. 01-53433-RBK
                                          §
        Debtor.                           §    (Chapter 11)

### NOTICE OF SALE PROCEDURES, AUCTION DATE AND SALE HEARING

PLEASE TAKE NOTICE that, on March ___, 2002, pursuant to a motion, dated February ___, 2002 (the "Sale Motion"), filed by Mooney Aircraft Corporation (the "Debtor"), the United States Bankruptcy Court for the Western District of Texas, San Antonio Division (the "Court") entered an Order (the "Sale Procedures Order") approving the Sale Procedures annexed hereto as Exhibit A (the "Sale Procedures") in connection with the proposed sale by the Debtor of certain Assets of the Debtor, including substantially all of the Debtor's assets (collectively, the "Assets") to one bidder.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sale Procedures, any bidder desiring to submit a bid at the Auction (a "Bid") shall send a letter indicating its interest in bidding addressed to Debtor c/o Greg Murray, Responsible Person, Mooney Aircraft Corporation, Louis Schreiner Field, Kerrville, Texas 78028, with a copy to Debtor's bankruptcy counsel, David S. Gragg, Langley & Banack, Incorporated, 745 E. Mulberry, Suite 900, San Antonio, Texas 78212, and shall be qualified by Debtor, in its sole discretion, by signing a confidentiality agreement and providing the requisite financial and other information (a "Qualified Bidder"). Qualified Bidders shall deliver such letters of interest and Bids in writing to Debtor, with a copy to Debtor's bankruptcy counsel David S. Gragg, so as, such that the bid is actually received not later than March ___, 2002 at 10:00 o'clock a.m. Central Standard Time.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sales Procedures, the Auction will be conducted at Courtroom No. ____, Old Post Office and Courthouse, 615 E. Houston, Fifth Floor, San Antonio, Texas 78205, or at another location timely disclosed by Debtor to Qualified Bidders on March ____, 2002 at ____:____ o'clock ___.m. (the "Auction Date").

PLEASE TAKE FURTHER NOTICE that, pursuant to the Sale Procedures, except as otherwise as set forth below with respect to executory contracts and unexpired leases, objections to any of the remaining relief requested by Debtor shall be set forth in writing and with particularly the grounds for such objections or other statements of position and shall be served by 10:00 a.m. on the day prior to the Sale Hearing Date on Debtor's counsel, David S. Gragg, Langley & Banack, Incorporated, 745 E. Mulberry, Suite 900, San Antonio, Texas 78212.

PLEASE TAKE FURTHER NOTICE that the Court has scheduled March ____, 2002, at _____:_____ o'clock ___ .m. (or such time thereafter as counsel may be heard) as the date for a hearing (the "Sale Hearing Date") to consider entry of an order, pursuant to the Sale Motion, authorizing and approving (i) the Sale of the Assets free and clear of all liens, claims, and encumbrances, pursuant to the Initial Asset Purchase Agreement or agreements as entered into by Debtor pursuant to the Sale Procedures for the Sale of the Assets as a whole or in parts; (ii) the assumption and assignment of certain executory contracts and unexpired leases in connection with the Sale of the Assets; and (iii) the exemption of the Sale from stamp or other similar taxes. The Sale Hearing Date may, however, be adjourned from time to time by announcement at the Sale Hearing in open Court, without notice.

PLEASE TAKE FURTHER NOTICE that objections, if any, that relate to the proposed assumption and assignment of executory contracts and unexpired leases (the"Assigned Contracts") (including, but not limited to, any objections relating to the validity of the cure amount as determined by Debtor or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses must be cured or satisfied under any of the assigned executory contracts or unexpired leases as of the Sale Hearing Date, not including accrued but not yet due obligations, in order for such contract to be assumed and/or assigned) (a "Cure Objection") shall be filed and served so as to be actually received by Debtor's counsel, David S. Gragg, Langley & Banack, Inc., 745 E. Mulberry, Suite 900, San Antonio, Texas 78212, by 10:00 a.m. on the day prior to the Sale Hearing Date (the "Cure Objection Deadline").

PLEASE TAKE FURTHER NOTICE that except as limited herein, unless a Cure Objection is filed and served by a party to an Assigned Contract or a party interested in an Assigned Contract by the Cure Objection Deadline, all interested parties who have received actual or constructive notice hereof shall be deemed to have waived and released any right to assert a Cure Objection and to have otherwise consented to the assignment of the Assigned Contract and shall be forever barred and estopped from asserting or claiming against Debtor, the successful Qualified Bidder or any other assignee of the relevant Assigned Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such assigned contract for the period prior to the Sale Hearing Date; provided, however, that although the underlying obligation itself must be asserted, specific dollar amounts for unliquidated claims or adjustments for percentage rent, real estate taxes, common area maintenance, or similar adjustable

charges (the "Unliquidated Charges"), as set forth in the relevant Assigned Contract, need not be included in the Cure Objections and shall be determined by further order of this Court or as provided in any agreement among the parties.

PLEASE TAKE FURTHER NOTICE that Cure Objections shall set forth the cure amount, except for the Unliquidated Charges, the Objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses, conditions to assignment and the support therefore.

PLEASE TAKE FURTHER NOTICE that hearings with respect to Cure Objections may be held (a) at the Sale Hearing; or (b) at such other date as the Court may designate, provided that if the subject Assigned Contract is assumed and assigned, the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) shall be deposited with and held in a segregated account by Debtor or such other person as the Court may direct pending further order of the applicable Court or mutual agreement of the parties. A properly filed and served Cure Objection shall reserve such party's rights against Debtor (but not any purchaser of the Assets) respecting the Cure Obligation, but shall not constitute an objection to the relief generally requested in the Sale Motion.

PLEASE TAKE FURTHER NOTICE that Debtor reserves the right, and have been authorized by the Court, to reject at and as of the Sale Hearing Date any executory contract or unexpired lease not to be assumed and assigned.

PLEASE TAKE FURTHER NOTICE that a copy of the proposed Sale Approval Order is attached hereto.

PLEASE BE FURTHER ADVISED that, pursuant to the Sale Procedures, Debtor may (i) amend the Sale Procedures or impose additional terms and conditions at or prior

to the Auction, (ii) extend the deadlines set forth in the Sale Procedures and/or adjourn the Auction by announcement at the Auction and/or the Sale Hearing by an announcement in open Court (without further notice), (iii) withdraw from sale any Assets at any time prior to or during the Auction and make subsequent attempts to market the same, and (iv) to reject all or all such Bids if, in the Debtor's judgment, any such Bid is not for a fair and adequate price.

PLEASE BE FURTHER ADVISED that all requests for information concerning the Assets should be in writing directed to Debtor's counsel, David S. Gragg, Langley & Banack, Incorporated, 745 E. Mulberry, Suite 900, San Antonio, Texas 78212.

Dated: _____, 2002,
San Antonio, Texas.

Respectfully Submitted,

**LANGLEY & BANACK, INCORPORATED**

_____
David S. Gragg
State Bar No. 08253300
Steven R. Brook
State Bar No. 03042300
M. Scott Zimmerer
State Bar No. 24003233
LANGLEY & BANACK, INCORPORATED
745 E. Mulberry, Suite 900
Trinity Plaza II
San Antonio, Texas 78212
(210) 735-6889 Telecopier
(210) 736-6600 Telephone



# EXHIBIT C

**LETTER AGREEMENT**

FINAL

## TERM SHEET FOR ACQUISITION OF ASSETS BY AASI

This Term Sheet sets forth certain of the proposed principal terms for the acquisition by Advanced Aerodynamics & Structure, Inc. ("Buyer" or "AASI") of substantially all of the assets of Mooney Aircraft Corporation ("Seller"). This Term Sheet is not a formal commitment. Any such commitment is conditioned upon the execution of definitive documentation that is satisfactory to all parties and satisfaction of the other conditions set forth herein. It is anticipated that the definitive sale agreement will be finalized and presented to the Court at the hearing on the sale.

**Buyer:**              Advanced Aerodynamics & Structures, Inc. ("AASI"), a Delaware corporation.

**Seller:**             Mooney Aircraft Corporation, a New Jersey corporation.

**Assets to be Acquired:**    Substantially all of the tangible and intangible assets of Seller.

**Purchase Price:**

1.  At Closing (a date that will be no more than 30 days after entry of a final order approving the sale entered by the bankruptcy court), Buyer shall pay $8 million pursuant to a *credit bid based on the Buyer*'s secured claim in the Seller's bankruptcy case (to be increased in increments within the sole discretion of the Buyer up to $13.7 million if a competing bid is made) **plus**

2.  At Closing, Buyer shall pay for the benefit of Seller into a trust account maintained by Counsel for the Seller an amount equal to all known and identifiable administrative expenses incurred but not previously paid by the Seller's bankruptcy estate (as of the date hereof unless otherwise indicated) which shall be payable as follows:

    (a)  cash of $148,000 for professional fees earned, accrued and not heretofore paid as of February 1, 2002 to the following: Langley & Banack: $62,000; Berger Singerman: $86,000;

    (b)  cash in the following amount for certain professional fees of professionals retained by the estate earned from February 1, 2002 through Closing, for fees and expenses incurred in connection with supporting and obtaining approval of the sale and the Closing of the sale to AASI,

S-113365.5

**FINAL**

which amount shall be payable by professional in the following amounts: Langley & Banack, Inc.: up to $75,000; Berger Singerman: up to $45,000;

(c)   undertakings in the form of unsecured notes payable to Seller for Seller's assignment to creditors of the Seller under a plan of reorganization to satisfy "cure" payments with regard to real estate taxes under certain leases designated by Buyer prior to Closing which are to be assumed and assigned;

(d)   cash of $15,000 to satisfy certain pension and profit sharing expenses under the Seller's Qualified Plan;

(e)   Buyer shall issue a promissory note for payment of unsecured state sales taxes to Seller for Seller's assignment under a plan of reorganization. The note shall be for the Allowed Amount of such claim and have terms consistent with section 1129 as to term and interest rate. Buyer and Seller shall confer prior to the date of court approval to develop an arrangement regarding any needed further adequate assurance to Seller with respect to Seller's post confirmation liability, if any, with regard to the tax liability satisfied by this promissory note.

3.   At Closing, Buyer shall provide in the form of unsecured notes payable to Seller for Seller's assignment adequate assurance for the payment of the Allowed Amount of property taxes owed by Seller's bankruptcy estate which shall be payable by the Debtor's estate in accordance with section 1129 of the Bankruptcy Code and payable in accordance with a plan of reorganization, with payment terms consistent with section 1129; **plus**

4.   Buyer shall make a contribution equal to 10% of all allowed unsecured claims up to and not to exceed the sum of $1 million (the "Contribution") to be paid to Seller as follows:

(a)   35% of the Contribution shall be made by a deposit in cash in an escrow account maintained for the benefit of the Seller by counsel for the Seller or by issuance of a standby letter of credit from an accredited U.S. Bank payable to the Seller at Closing;

(b)   65% of the Contribution shall be made by transfer and delivery of shares equal to a value of $650,000

S-113365.5



**FINAL**

in common stock of AASI at the closing price of
such stock at the date of the Closing which stock
shall be restricted (as described below), but may
become tradeable upon the earlier to occur of (i)
approval of a "no action" letter submitted to the
Securities and Exchange Commission on or before
approval of the sale in accordance with 11 U.S.C.
§ 1145, or (ii) the date the shares are otherwise
registered. It is Buyer's intent to submit the no
action letter promptly, with approval sought prior to
Closing. In the event the no action letter is not
obtained by the Closing Date, Buyer agrees to
deposit $250,000 in common stock of Buyer as of
the Closing Date with counsel for Buyer which shall
be held for a period of 60 days and be transferred to
Seller on the 61st day following the Closing Date in
the event the no action letter has not been issued. In
the event the no action letter has been issued, on or
before the 60th day following the Closing Date, then
Buyer shall retain this stock. The shares of common
stock issued to the Seller shall be subject to a lock
up provision whereby such common stock shall be
restricted as to sales following the Closing. The
restriction shall limit the sale to 1/10th of the total
of any common stock issued at Closing per month
following the Closing, such 1/10th to be applicable
to each holder(s) of the common stock. In the event
that a holder of the common stock does not sell up
to or all of the 1/10th allotment during any of the
ten months following the Closing, then such unsold
allotment may be carried over for the sale in any
subsequent months. The lock up provision shall not
apply to any warrants under the sale; and

(c)      issuance to Seller of warrants to purchase common
stock of Buyer up to the aggregate amount of $1
million dollars for a price of $.45 per common share
and having an expiration of two years from the later
of (i) the Closing Date or (ii) the Effective Date of a
plan of reorganization, but in no event later than
August 31, 2004, such warrants subject to a call
right in favor of Buyer to purchase at Buyer's sole
option all or any part of the warrants for $.90 per

S-113365.5



**FINAL**

|  |  | common share during any 30 day period following any 10 consecutive day period in which Buyer's common stock trades for $.90 or more; |
|--|--|--|

**plus**

5.  Retention by Seller of all Chapter 5 avoidance actions and other choses in action owned by the Seller save and except any Chapter 5 avoidance action or other chose in action that may exist as against Buyer, Congress Financial Corporation, and any of their respective officers, directors, agents, attorneys or affiliates.

**Other Terms:**

1.  Seller shall give to Buyer at Closing a release of all claims and causes of action the bankruptcy estate may hold, if any, against Buyer and/or Congress Financial Corporation and any of their respective officers, directors, agents, attorneys or affiliates, save and except those expressly set forth herein for the purchase under this Agreement;

2.  Buyer's deficiency claim (equal to Buyer's $13.7 million claim less the amount of any credit bid plus amount of any advances by AASI) shall remain and comprise an allowed unsecured claim against the Seller's bankruptcy estate and be eligible for voting and treatment in any plan included in the class of unsecured creditors subject to the following: (i) upon the occurrence of an Effective Date for any plan and only in the event that the Buyer is able to purchase the assets acquired hereunder, the Buyer's Allowed Unsecured Claim will be subordinated to the claims of the other unsecured creditors for distribution purposes; and (ii) the claim amount shall be deemed allowed in the amount stated for voting purposes in connection with a plan of reorganization.

**Break-Up Fee/Expense Reimbursement:**

Buyer shall receive a break-up fee or expense reimbursement of $200,000, an amount intended to compensate Buyer for its costs and expenses incurred and for the benefits obtained by the Seller in the event that the Buyer is not successful in closing the sale because of a higher and better bid.

**Bidding Procedures:**

The parties agree that as a part of the relief requested from the bankruptcy court, that appropriate bidding procedures will be implemented and approved which require bids to (i) track the

S-113365.5



FINAL

structure of this term sheet, except as to the provision relating to the transfer of common stock and warrants in AASI which for any other bidder shall be a requirement for payment of cash equal to the current trading value of the common stock and warrants as of the date any alternative sale is approved, (ii) provide that any competing incremental bids shall exceed the value of the AASI bid set forth herein by $250,000 and increase the distribution payable to unsecured creditors by 2.5% of the total amount of all unsecured claims, inclusive of the deficiency claim of AASI, and (ii) that any competing bidder deposit a cash amount with Seller's counsel for deposit in a trust account equal to $1,000,000 an amount which is approximately 10% of the total cash value of Buyer's bid herein (exclusive of those items relating to issuance of warrants or escrow of common stock).

**Approvals:** The Seller shall obtain approvals as necessary and required to implement the sale, including approval from the shareholders and the board of directors. In addition, the sale may be contingent upon regulatory approvals which the parties shall seek to obtain prior to a Closing. The sale is not contingent on FAA regulatory approval.

**Documents:** The parties will promptly prepare appropriate pleadings to implement the sale for immediate filing and a form of Asset Purchase Agreement containing usual and customary representations, warranties and conditions for final approval prior to the date of any hearing to approve the sale.

**Closing:** The Closing shall occur as soon as practicable, but no later than March 29, 2002. The deadline can be extended by agreement of Buyer and Seller.

**Bankruptcy Court Approval:** The transaction described herein and related implementation documents must be approved pursuant to 11 U.S.C. §§ 363 and 365 by a United States Bankruptcy Court having jurisdiction over the prospective Chapter 11 proceedings.

ACKNOWLEDGED AND AGREED as of the ___ day of February, 2002, with the understanding that such agreements are non-binding and subject to the execution of definitive documentation.

S-113365.5

**FINAL**

**AASI, the Buyer**

By:_____
Name:_____

Title:_____

**MOONEY AIRCRAFT CORPORATION, the Seller**

By:_____
Name: GREG T. MULLRY

Title: VICE PRESIDENT - FINANCE
         RESPONSIBLE PERSON

S-113365.5

FINAL

AASI, the Buyer

By: _____

Name: GENE CONFORT

Title: EXECUTIVE VICE PRESIDENT

MOONEY AIRCRAFT CORPORATION, the Seller

By: _____
Name: _____

Title: _____

S-1139655

**FINAL**

**CONSENT GIVEN:**

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By: _____

Name: _JAMS H. Flanagan_

Title: _its Chairman_

S-113365.5

# EXHIBIT D

PROPOSED SALE ORDER