IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOONEY AEROSPACE GROUP, LTD. | : | Case No. 04-11733 (MFW) |
| | : | |
| Debtor. | : | |
| | : | **Hearing Date: September 13, 2004 @ 4:00 pm** |
| | : | **Response Date:  September 7, 2004 @ 4:00 pm** |
| | : | |
| | : | |

**RESPONSE OF ALPHA CAPITAL, AG, IN OPPOSITION TO THE MOTION
OF THE ACTING UNITED STATES TRUSTEE TO CONVERT
CASE TO A CASE UNDER CHAPTER 7**

Alpha Capital, AG ("Alpha Capital"), by and through its undersigned counsel, Klehr,

Harrison, Harvey Branzburg & Ellers, LLP, responds in opposition to the motion of the acting

United States Trustee (the "Trustee") to convert this case to case under chapter 7 of the

Bankruptcy Code (the "Conversion Motion") and in support of this objection avers as follows:

**INTRODUCTION**

1.      By seeking conversion of this case at the same time the Debtor has proposed a

consensual plan of reorganization that will provide for a distribution to unsecured creditors, the

Trustee is intent on scuttling the reorganization process before the Court and creditors have had

an opportunity to consider the merits of the Debtor's proposed reorganization.  In the face of the

certain recovery to creditors in the Debtor's consensual plan, the conversion of this case will

only result in substantial delay in the ultimate resolution of these proceedings and an entirely

uncertain recovery for creditors.

2.      Moreover, since Alpha Capital holds a perfected security interest in the shares of

Mooney Aircraft Corporation ("MAC"), the Debtor's former subsidiary, even if a hypothetical

chapter 7 trustee were successful in avoiding the transaction that resulted in transfer of the shares

1

589564

to Allen Holding and Finance, Ltd. ("Allen Holding"), Alpha Capital would still hold a perfected security interest in the shares. Thus, in order for creditors to obtain a better recovery through conversion, the chapter 7 trustee would not only need to avoid the transfer of the shares to Allen Holding, but also to avoid Alpha Capital's perfected security interest in the shares. Even if successful, creditors would still not recover unless the shares were to retain substantial value through years of costly litigation.

3.        While the Trustee cites significant policy concerns in Conversion Motion, these concerns are satisfied by the independence of the Debtor or through the appointment of the Official Committee of Unsecured Creditors. While it is important that the Debtor's management be truly independent, the Committee, the Trustee and other parties can insure management's fairness and good faith without the draconian remedy of conversion. Under these circumstances, it is clear that creditors would be better off by allowing the plan confirmation process to proceed. For these reasons, the Trustee's motion should be denied.

## FACTUAL BACKGROUND

4.        Debtor, Mooney Aerospace Group, Ltd. (the "Debtor"), initiated this action by filing a petition for voluntary relief under chapter 11 under the United States Bankruptcy Code (the "Bankruptcy Code") on June 11, 2004 (the "Petition Date"). Since the Petition Date, the Debtor has remained in possession of its assets as a debtor-in-possession under Sections 1107 and 1108 of the Bankruptcy Code.

5.        On or about June 30, 2004, the Trustee appointed an Official Committee of Unsecured Creditors (the "Committee"). The Committee has retained the law firm of Arent Fox, PLLC, as its counsel.

6.        The Debtor is a holding company whose principal asset is stock that it previously owned in a wholly owned operating subsidiary, MAC. MAC is a manufacturer of

2

589564

single engine, piston driven airplanes. MAC did not file for bankruptcy protection. Since the Debtor is a holding company, it is not an operating entity. The Debtor's schedules indicate that it owns certain miscellaneous assets having a collective value of approximately $100,000. The Debtor contends that it has liabilities totaling approximately $46.8 million.

7.      The Debtor is indebted to Alpha Capital in the approximate sum of $4,698,313.71, plus continually accruing interest, pursuant to a series of promissory notes executed by the Debtor from March 23, 2001 to August 30, 2002 (the "Alpha Capital Notes").

8.      In 2002, the Debtor defaulted on its obligations to Alpha Capital as memorialized in the Alpha Capital Notes. In consideration of Alpha Capital's forbearance from exercising its rights and remedies against the Debtor and to enable the Debtor to restructure the obligations, on December 30, 2002, the Debtor executed a Stock Pledge Agreement and Security Agreement in favor of Alpha Capital, and other investors who held similar notes, to forbear from exercising their rights and remedies against the Debtor. Under the Stock Pledge Agreement and Security Agreement, the Debtor conveyed to Alpha Capital a perfected security interest in all of the shares of MAC owned by the Debtor, as well as the Debtor's other assets. A collateral agent was appointed to hold the MAC share certificates, thus perfecting Alpha Capital's security interest in these instruments.

9.      The Stock Pledge Agreement and the Security Agreement conveyed liens on the Debtor's shares in MAC to Alpha Capital and other similarly situated noteholders to secure in excess of $21 million in debt.

10.     On or about May 28, 2004, the Debtor entered into a Stock Purchase Agreement with Allen Holding, a Swiss corporation. Under the terms and conditions of the Stock Purchase Agreement, the Debtor conveyed to Allen Holding, subject to the security interests conveyed by

3

589564

the Debtor by Alpha Capital and other parties to the Stock Pledge Agreement and Security Agreement, all of the Debtor's interest in the MAC shares. Under the Stock Purchase Agreement and a separate Assumption Agreement, Allen Holding agreed to assume the obligations of the Debtor and MAC under a series of secured loans, which include the Alpha Capital Notes, totaling approximately $21 million. Also, Allen Holding agreed, subsequent to the transfer of the shares, to invest an additional $4 million in MAC in to help MAC stay in business.

11.     In April 2003, in advance of the Allen Holding transaction, a valuation of MAC was performed by Oxbridge Group that valued MAC on a going concern basis in the range of $7.5 and $12.5 million, substantially less than the debt that is secured by the Debtor's shares in MAC.

12.     The Debtor is proceeding with its reorganization. The Debtor has filed a plan of reorganization and a disclosure statement that will be considered at the Court hearing on September 13, 2004. Under the plan, the Debtor proposes to convey to unsecured creditors 46% of the stock of the Reorganized Debtor. Under the plan, five million shares of the Reorganized Debtor will be issued to Allen Holding in exchange for the reconveyance of the shares of MAC to the Debtor. 4.6 million shares of the Reorganized Debtor will then be distributed to unsecured creditors and 200,000 shares of the Reorganized Debtor will be distributed to preferred shareholders. Under this structure, unsecured creditors will own 46% of the Reorganized Debtor's outstanding stock. While the plan provides for other consideration to unsecured creditors and certain limited restrictions on the resale of the shares, the proposed plan structure will provide for a definite recovery to unsecured creditors of free-trading stock in the Reorganized Debtor.

4

589564

## LEGAL ANALYSIS

13.　As a basis for converting this case to a proceeding under chapter 7, the Trustee argues that the Debtor's management is not independent, that, as a holding company, the Debtor has no reasonable prospect for rehabilitation, and that the claims against Allen Holding are best pursued by a chapter 7 trustee. For the reasons set forth below, the Trustee's arguments do not create sufficient cause to convert this case to a chapter 7 proceeding, as required by section 1112(b) of the Bankruptcy Code. Since the Debtor is now seeking confirmation of a consensual plan of reorganization, any consideration of whether "cause" exists under section 1112(b) must be weighed against the Debtor's proposed plan.

### The Value of Any Claims Cited by The Trustee Are Recovered In the Plan

14.　The Trustee argues that a chapter 7 trustee is best suited to analyze and pursue claims on behalf of the Debtor's estate. Specifically, the Trustee contends that the transfer of shares to Allen Holding is avoidable and that the transaction violates the fiduciary duty owed by the Debtor's officers and directors. The Trustee then reasons that the transaction provides a sufficient basis for a conversion of this case to a proceeding under chapter 7.

15.　Even assuming that the Trustee's analysis is correct and that the transfer of the shares of MAC to Allen Holding is avoidable, the avoidance of this transfer would not affect Alpha Capital's perfected security interest in the shares. At the time of the transfer, MAC was valued in the range of $7.5 and $12.5 million. The liens encumbering the Debtor's shares in MAC, which remain recorded against the shares, total in excess of $21 million. Since the avoidance of the Allen Holding transfer would merely return the shares to the *status quo ante*, recovery of the shares by the chapter 7 trustee would only result in the recovery of property in which the Debtor has no equity. The return of the MAC shares to the Debtor would be a pointless event, since it would not generate any potential recovery for unsecured creditors.

5

589564

16.    The Trustee also cites the transfer of the MAC shares to Allen Holding as evidence that the Debtor's officers' and directors' have abrogated their fiduciary duties. The Trustee cites no facts, other than the transfer itself, which would support such a claim. Given that the Debtor had no equity in the MAC shares at the time of the transaction, the fiduciary duty claims related to the transfer of the shares would also be value-less. The damages recoverable under any breach of fiduciary duty claim brought against officers and directors under Delaware law would be limited to the actual compensatory damages suffered by the Debtor as a result of the alleged breach of duty. Here, since the shares in MAC were essentially worthless, given the perfected security interest conveyed to Alpha Capital and other noteholders, it is doubtful that any claim for breach of fiduciary duty, even if valid, would result in any recovery to the Debtor. In addition, it also unclear whether the Debtor has maintained insurance coverage for its directors and officers or whether the officers and directors could satisfy a judgment without coverage.

17.    If this case converts to a chapter 7 proceeding, the recovery that is provided in the plan will replaced by years of investigation and potential litigation involving the Allen Holding transaction. The Trustee cites no basis to conclude that creditors would be better off at the end of this extensive and costly process than they would be through the proposed plan of reorganization. A chapter 7 trustee would be faced with an extremely difficult multi-tiered litigation in a case where there is no revenue or other assets to fund administrative expenses. In order to prevail, the Trustee will need to avoid the fair consideration that was offered in connection with the Allen Holding transaction. Even if the transaction was avoided, the re-transfer of the MAC interests would be subject to Alpha Capital's security interest.

589564

18.     Even if successful in avoiding the Allen Holding transaction, the Trustee would then need to avoid the 2002 restructuring transaction that conveyed the security interests to the noteholders before the value of the MAC shares would be available for unsecured creditors. The Trustee has not articulated any basis for this relief. Moreover, even if the noteholders' liens were avoided, the substantial debt to the noteholders would be recharacterized as unsecured debt that would further dilute any recovery available for unsecured creditors.

19.     Beyond these hurdles to a recovery, substantial additional expenses will be incurred in the pursuit of litigation against these entities. Based upon these facts, it is extremely unlikely that the litigation advocated by the Trustee in the Conversion Motion would result in a greater recovery that that offered in the proposed plan.

### The Sufficiency of the Debtor's Corporate Governance Can Be Addressed By the Committee and At Confirmation

20.     Beyond the question of whether the Debtor can pursue the litigation claims discussed in the Conversion Motion, the Trustee argues that the Debtor's management cannot proceed in chapter 11 because management is not sufficiently independent. The only facts offered by the Trustee in support of this contention are, again, management's involvement in the Allen Holding transaction.

21.     While it is important to insure that the Debtor's management's duties are being followed, conversion of this case to a case under chapter 7 is not warranted where there are sufficient checks and balances to insure the Debtor's compliance with applicable duties. The Committee has been formed, has retained counsel and has been actively involved in the negotiations for a consensual plan of reorganization.

22.     Even where questions regarding the independent management are raised, the existence of an active Creditors Committee tempers the need for extraordinary relief to remove

7

management's influence over the Debtor. As the Bankruptcy Court noted *In re General Oil Distributors, Inc.*, 42 B.R. 402, 410 (Bankr. E.D.N.Y. 1984), it is appropriate even to allow questionable management to remain in place under the watchful eye of creditors rather than saddling the estate with the expense of a trustee and additional counsel. Moreover, where the case is proceeding to a reorganization, and no evidence of post-petition wrong doing by management has been presented, allowing the case to remain in chapter 11 under the supervision of creditors is appropriate. *Id.*

23.     The Debtor's good faith and adherence to proper fiduciary duties can also be monitored by the Trustee. The Trustee will be able to actively participate and monitor the plan confirmation process to insure that the proposed transaction is fair to all concerned and that it is consistent with the Debtor's management's fiduciary duties.

24.     Under these circumstances, conversion is an extreme remedy that will almost certainly eviscerate any potential recovery to unsecured creditors. The Debtors have proposed a plan of reorganization in good faith that, with the consent of the noteholders and the Committee, will resolve all potential claims relating to the Allen Holding transaction with a certain outcome.

## The Debtor Is Not Prevented From Reorganizing
## Simply Because It Is A Holding Company

25.     The Trustee finally asserts that conversion of this case is appropriate because the Debtor is a holding company and does not conduct regular business operations. The Trustee cites no legal support for the proposition that a holding company should be denied the opportunity to reorganize in chapter 11. In fact, this Court and bankruptcy courts around the country often consider the reorganization of holding companies through the chapter 11 process. By proposing a consensual plan of reorganization, the Debtor has, in fact, shown a strong likelihood of possibility of rehabilitation and should be allowed to proceed in chapter 11.

8

589564

26.    For these reasons, the conversion must be denied in its entirety.

WHEREFORE, Alpha Capital requests that this Court issue an order denying the Trustee's motion to convert this case to a proceeding under chapter 7 of the Bankruptcy Code in its entirety.

Respectfully submitted,


KLEHR, HARRISON, HARVEY,
BRANZBURG & ELLERS LLP

/s/ Richard M. Beck
Richard M. Beck (#3370)
919 Market Street, Suite 1000
Wilmington, DE 19801
Phone:  302-426-1189
Fax:  302-426-9193
E-Mail:  rbeck@klehr.com

Attorneys for Alpha Capital, AG

9

589564